1

2

3

4

5

6

7

8            **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   LAWRENCE PAMER,                      No. CIV S-07-1902-MCE-CMK-P

12              Plaintiff,

13       vs.                              <u>FINDINGS AND RECOMMENDATIONS</u>

14   ARNOLD SCHWARZENEGGER, et al.,

15              Defendants.

16   _____/

17              Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant

18   to 42 U.S.C. § 1983.   Pending before the court is defendants' motion to dismiss (Doc. 70).

19   Plaintiff filed an opposition to the motion (Doc. 76) and defendants filed a reply (Doc. 82).

20                          **I.  BACKGROUND**

21              This action proceeds on plaintiff's second amended complaint (Doc. 19).  His

22   complaint includes claims regarding denial of medical needs, indifference to safety, retaliation

23   and several state tort violations.  Defendants previously brought a motion for more definite

24   statement, which was denied.  The undersigned found that although plaintiff's complaint is not

25   eloquently written, and lacks explicit detail, his claims were set forth sufficiently for the

26   Defendants to understand them.

## II. DISCUSSION

Defendants bring this motion to dismiss based on plaintiff's failure to state a claim. Plaintiff has filed an opposition to the motion, and Defendants have filed a reply.

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability,

it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

## A.   DENIAL OF MEDICAL NEEDS

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.   See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

1          Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

2    injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at

3    105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental

4    health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is

5    sufficiently serious if the failure to treat a prisoner's condition could result in further significant

6    injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d

7    1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).

8    Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition

9    is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

10   activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See

11   Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

12         The requirement of deliberate indifference is less stringent in medical needs cases

13   than in other Eighth Amendment contexts because the responsibility to provide inmates with

14   medical care does not generally conflict with competing penological concerns.  See McGuckin,

15   974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to

16   decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

17   1989).  The complete denial of medical attention may constitute deliberate indifference.  See

18   Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

19   treatment, or interference with medical treatment, may also constitute deliberate indifference.

20   See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also

21   demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

22         Negligence in diagnosing or treating a medical condition does not, however, give

23   rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a

24   difference of opinion between the prisoner and medical providers concerning the appropriate

25   course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh,

26   90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff claims that "Defendants Warwick and Weaver failed to properly act investigating a lapse in plaintiff's blood pressure medication when requested by the Prison Law Office Attorney under the Plata case." (Comp. at 12). Warwick is a Deputy Attorney General and Weaver is the Plata Implementation Manager. As such, plaintiff fails to plead facts demonstrating these defendants denied, delayed, or intentionally interfered with his medical treatment. Instead, his allegations stem from an investigation which was conducted after the fact. Accordingly, plaintiff's complaint fails to state a claim for intentional interference with a serious medical need against these two defendants, and the motion to dismiss should be granted.

As to defendant Anderson's alleged deliberate indifference to plaintiff's medical needs, plaintiff claims that "in an attempt to correct or cleanse the physicians orders and medical records or out of mere negligence wrote the wrong year on the order, but regardless there was a pre-existing order Defendant Anderson failed to properly act to plaintiff's serious medical needs." (Comp. at 17). Defendants argue the allegations fail to demonstrate that defendant Anderson knew of and disregarded any excessive risk to plaintiff's health. Plaintiff responds that "Defendant Anderson made it perfectly clear to plaintiff that he was in some sort of serious trouble and was deliberately stopping his pain management medication." While this claim is unclear, it appears from plaintiff's claim that Dr. Anderson had requested the neurosurgeon to taper off, not instantly discontinue, plaintiff's medication. However, nowhere in his complaint or opposition to the motion does plaintiff indicate that Dr. Anderson was one of his treating physicians or that he was actually the one in charge of his medication, rather than a reviewing physician. Thus, the claim of medical indifference is insufficient and the motion to dismiss should be granted.

As to defendant Andreason, who plaintiff identifies as the Chief Medical Officer at the California Medical Facility (CMF), the claims for deliberate indifference are unclear. Plaintiff alleges defendant Andreason was involved in an alleged cover-up conspiracy, improperly denied his inmate grievance appeals, and failed to process his inmate grievance as an

1    emergency appeal.  These claims are addressed below.  However, there are no facts alleged in the

2    complaint indicating that defendant Andreason was personally involved in plaintiff's medical

3    treatment or lack thereof, including his medication.  Therefore, the complaint fails to state a

4    claim against defendant Andreason for deliberate indifference to plaintiff serious medical needs,

5    and the motion to dismiss on this ground should be granted.

6              Plaintiff also states "Defendants Cry, Khoury, Bick, Andreason, Donahue,

7    Kearney, Warwick, and Weaver conspired to cover up, deny to forego their areas of

8    responsibility to plaintiff's serious medical needs with no legitimate penological interest."

9    (Compl. at 17).  However, such conclusory allegations cannot sustain a claim of deliberate

10   indifference to a serious medical need.

11             Plaintiff's claims against defendants Cox, Roche, and James, all appear to also

12   arise out of the denial of his inmate grievance appeals and not from the treatment he received or

13   failed to received from these individuals personally.  He claims that he was denied his pain

14   medication by a nurse per prison policy and pursuant to a policy endorsed by defendants Cox,

15   Roche and James.  Documents referred to by defendants, and attached to plaintiff's original

16   complaint, indicate that during the inmate grievance process, plaintiff was interviewed by Dr.

17   James, who apparently determined that plaintiff's prescription for his prior pain medication,

18   Oxycodone or Methadone, had expired, and instead of renewing those prescriptions, determined

19   Motrin was sufficient to manage his pain.  To the extent this decision is the basis for plaintiff's

20   claim against Dr. James, such a situation is insufficient to maintain a claim for deliberate

21   indifference to a serious medical need.  Rather, at best plaintiff's allegation raises a difference of

22   opinion as to what medication was necessary.  However, Dr. James did not deny him pain

23   medication, but prescribed a medication plaintiff did not agree with.  There is nothing in the facts

24   alleged which raise a claim for denial of medical treatment.  As stated above, a difference in

25   opinion is insufficient.  In addition, there are no facts alleged that either defendant Roche or Cox

26   was involved in plaintiff's treatment or the decision of what pain medication was appropriate.  It

1  appears their only involvement in plaintiff's treatment was the endorsement of a policy and a

2  review of his inmate grievance, which, discussed below, are also insufficient.  Therefore, the

3  motion to dismiss should be granted on these grounds.

4          **B.          CONDITIONS OF CONFINEMENT**

5                  The treatment a prisoner receives in prison and the conditions under which the

6  prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

7  and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

8  511 U.S. 825, 832 (1994).  The Eighth Amendment "embodies broad and idealistic concepts of

9  dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102

10  (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.

11  Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

12  "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy,

13  801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only

14  when two requirements are met: (1) objectively, the official's act or omission must be so serious

15  such that it results in the denial of the minimal civilized measure of life's necessities; and (2)

16  subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

17  inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

18  official must have a "sufficiently culpable mind."  See id.

19                  "To sustain an Eighth Amendment claim, the plaintiff must prove a denial of 'the

20  minimal civilized measure of life's necessities,' occurring through 'deliberate indifference' by

21  prison personnel or officers."  Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996 (quoting

22  Rhodes v. Chapman, 452 U.S. 337, 347 (1981), Wilson v. Seiter, 501 U.S. 294, 302-03 (1991)).

23  However, temporary unconstitutional conditions of confinement do not rise to the level of

24  constitutional violations.  See Anderson v. County of Kern, 45 F.3d 1310 (9th Cir. 1995).

25  / / /

26  / / /

1    Plaintiff's claims as to the conditions of his confinement relate to the lack of

2 bathroom facilities, the failure of defendant Cobb to unlock the bathroom facilities, and the lack

3 of proper clothing for 40 days and shower for 15 days.[1]  While at some point lack of proper

4 clothing, and a shower may rise to the level of a constitutional violation, it is not apparent from

5 the facts alleged in this case that plaintiff suffered such a violation.  From the facts alleged, it

6 appears the lack of clothing and shower occurred one time, and was not an on-going, continuous

7 occurrence.   The denial of a shower on a continuous basis at some point will rise to the level of

8 violating the Eighth Amendment.  However, a one time denial of a shower for 15 days is

9 insufficient.  Similarly, adequate clothing is a basic necessity, and denial of adequate and clean

10 clothing for an extended basis will rise to the level of violating the Eighth Amendment.

11 However, a one time denial of adequate clothing for a period of 40 days is insufficient to rise to

12 that level.  In addition, plaintiff fails to identify any specific defendant responsible for denying

13 him adequate clothing and shower facilities.  Therefore, these claims should be dismissed.

14    However, the same is not true for the allegations against defendant Cobb for

15 failure to make bathroom facilities available.  Plaintiff alleges that instead of opening the

16 bathroom facilities every half-hour, defendant Cobb would only unlock the facilities every two

17 hours.  It appears that this situation was not a one time temporary circumstance, but occurred on

18 an ongoing basis for over a year, which plaintiff alleges was due to the overcrowded condition

19 and use of the day-room for housing inmates.  Plaintiff alleges that due to his medication he

20 required use of the bathroom facilities frequently.  He had requested and was denied use of the

21 bathroom facilities, resulting multiple times in accidents wherein he defecated and/or urinated on

22 himself.

23 / / /

24

25    [1]    Plaintiff also makes some vague and conclusory allegations about being denied
dining, exercise, and bedding.  However, conclusory statements that he was denied such
activities without more fails to support any claim.  In addition, he fails to identify any individual
26 responsible for such a denial.

8

1    Plaintiff's claims against defendant Cobb for failure to provide adequate access to

2   the bathroom facilities are sufficient to survive the motion to dismiss.  However, the claims

3   regarding lack of a shower for 15 days and lack of adequate clothing for 40 days are inadequate,

4   and fail to identify the alleged perpetrator, and should be dismissed.

5   **C.    THREATS**

6    As stated above, a prison official violates the Eighth Amendment only when two

7   requirements are met: (1) objectively, the official's act or omission must be so serious such that it

8   results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively,

9   the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.

10  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must

11  have a "sufficiently culpable mind."  See id.  Allegations of verbal harassment do not state a

12  claim under the Eighth Amendment unless it is alleged that the harassment was "calculated to . . .

13  cause [the prisoner] psychological damage."  Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th

14  Cir. 1987); see also Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by  135 F.3d

15  1318 (9th Cir. 1998).

16   Plaintiff's claims of threats are vague, conclusory and lack factual supporting

17  allegations.  He claims he was threatened with loss of property, transfer to high security yard, and

18  includes conclusory statements relating more to his claims of retaliation that any actual threats.

19  To the extent he is actually claiming he was threatened, there is generally no factual support in

20  his complaint for such a claim.  Plaintiff claims that defendant Cobb tried to intimidate him by

21  threatening him with a disciplinary report, which was never apparently filed.  He claims

22  defendant Aronsen made some vague threat as to property liens, and defendant Lamberton made

23  threats to send him to a high security (violent) yard, where he was then actually sent.  Finally, he

24  claims defendant Miller made some unspecified kind of threat for filing a legal action.

25  ///

26  ///

1    Plaintiff fails to clarify his claims much in his opposition, except to state that the

2    defendant orchestrating the "campaign of terror" against him was defendant Murray.  However,

3    the court and plaintiff have been informed that defendant Murray is deceased and therefore has

4    not been served and has not made an appearance in this case (See Doc. 26).  The court is not,

5    therefore, analyzing his claims against defendant Murray.

6    Nowhere does plaintiff assert that he suffered any actual harm resulting from these

7    threats, other than a vague reference to physical injury.  His claims of threats amount to no more

8    than verbal harassment, without rising to the level of some psychological harm.  He therefore

9    fails to state a claim regarding the alleged threats, and the motion to dismiss these claims should

10    be granted.

11    **D.    RETALIATION**

12    In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must

13    establish that he was retaliated against for exercising a constitutional right, and that the

14    retaliatory action was not related to a legitimate penological purpose, such as preserving

15    institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).

16    In meeting this standard, the prisoner must demonstrate a specific link between the alleged

17    retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th

18    Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner

19    must also show that the exercise of First Amendment rights was chilled, though not necessarily

20    silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir.

21    2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner

22    plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials

23    took adverse action against the inmate; (2) the adverse action was taken because the inmate

24    engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment

25    rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes,

26    408 F.3d at 568.

1    As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not

2  alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm

3  that is more than minimal will almost always have a chilling effect." Id. at n.11.  By way of

4  example, the court cited Pratt in which a retaliation claim had been decided without discussing

5  chilling.  See id.  This citation is somewhat confusing in that the court in Pratt had no reason to

6  discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate

7  penological interests.  See Pratt, 65 F.3d at 808-09.  Nonetheless, while the court has clearly

8  stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse

9  action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also

10  Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action

11  which is more than minimal satisfies this element.  Thus, if this reading of Rhodes is correct, the

12  chilling effect element is essentially subsumed by adverse action.

13    Plaintiff claims several of the defendants acted together to retaliate against him

14  and have him transferred to another institution.  He claims defendant Miller threatened him for

15  filing a legal action.  He also claims defendant Khoury cleared him for transfer, and that

16  defendants Miller, Moreno, Prebula, Donahue, and Geoffrey conspired to drop his classification

17  score apparently to support the transfer to another institution.  He further claims defendant Miller

18  scheduled an adverse action annual program review.  He alleges that all of these actions were

19  taken due to threats by defendants Murray, Aronsen, Cobb and Miller for his participation in

20  unspecified legal activities.

21    Plaintiff's retaliation claims fail to satisfy the pleading requirements to state a

22  claim.[2]  Specifically, he fails to identify any actual adverse action the defendants took and fails to

23  _____

24    [2]    In addition to those addressed herein, plaintiff also alleges other actions of
    retaliation, but those are unrelated to any of the moving defendants.  He claims his cell was
25  trashed after filing an appeal under the Americans with Disabilities Act, after which he
    relinquished his pursuit of redress.  However, no individuals are identified as the perpetrator of
26  such actions.  Without a named defendant identified, plaintiff is not able to pursue such a claim
    even if it were to contain sufficient facts.

1  identify what protected activity he was involved in.  Plaintiff does make some reference to a civil

2  rights action he was filing in July 2004, wherein defendant Miller made some type of

3  unidentified threat for his attempting to do so, and kept his application to proceed in forma

4  pauperis for several weeks.  However, plaintiff fails to identify what type of threat was made,

5  what effect such a threat had on him, and fails to explain how such a threat can be considered an

6  adverse action.  He also fails to explain how keeping his application for a few weeks was an

7  adverse action, or even had any negative impact on his legal action.  As such, his claim is

8  insufficient.

9         His other claims of retaliation relate to a transfer.  He claims defendants Khoury,

10  Miller, Moreno, Prebula, Donahue, and Geoffrey all worked together to lower his classification

11  scores in order to facilitate a transfer.  His claims are insufficient as he again fails to identify an

12  adverse action.  It is difficult for the court to understand how lowering a classification score

13  could be considered adverse.  Generally, a lower score means housing at a lower security

14  institution.  While plaintiff appears to be claiming he was transferred to a higher security prison,

15  this would conflict with having a lower classification score.  In addition, plaintiff fails to allege

16  that this action, if it could be considered adverse, was premised on a protected activity.  The only

17  legal action he mentions, which is in relation to his other retaliation claim, was in July 2004.  His

18  claim regarding his classification score and transfer occurred in the spring of 2005.  He makes no

19  factual connection between his prior legal action and the transfer.  Therefore, his allegations

20  relating to his transfer are insufficient to state a claim for retaliation.  The motion to dismiss these

21  claims should be granted.

22      **E.    CONSPIRACY**

23         Plaintiff claims defendants Miller, Khoury, Prebula, Moreno, Donahue, and

24  Geoffrey conspired together to retaliate against him.  However, as stated above, plaintiff's claims

25  for retaliation are insufficient.  It follows then, that there cannot be a claim for conspiracy related

26  thereto and these claims should be dismissed.  In addition, plaintiff fails to allege any particular

1  agreement among the defendants to violate his constitutional rights.  His conclusory allegations

2  of a conspiracy are insufficient.  See Price v. Hawai'i, 939 F.2d 702, 708-09 (9th Cir. 1991).  The

3  motion to dismiss these claims should be granted.

4      **F.**    **GRIEVANCE PROCESS**

5         Prisoners have no stand-alone due process rights related to the administrative

6  grievance process.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v.

7  Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling

8  inmates to a specific grievance process).  Because there is no right to any particular grievance

9  process, it is impossible for due process to have been violated by ignoring or failing to properly

10  process grievances.   Numerous district courts in this circuit have reached the same conclusion.

11  See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly

12  process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863

13  (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address

14  grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL

15  29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process

16  a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967

17  (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function

18  properly failed to state a claim under § 1983).  Prisoners do, however, retain a First Amendment

19  right to petition the government through the prison grievance process.  See Bradley v. Hall, 64

20  F.3d 1276, 1279 (9th Cir. 1995).  Therefore, interference with the grievance process may, in

21  certain circumstances, implicate the First Amendment.

22         Plaintiff makes several claims regarding the denial of his inmate grievance

23  appeals.  He claims he submitted inmate appeals regarding the denial of his medication, which

24  were twice denied by defendant Cry, a decision which was then approved by defendants

25  Donahue, Bick, Andreason and Khoury.  Next, he claims his inmate grievance was ignored for

26  ten months, but fails to identify who was responsible for that delay.  Plaintiff then claims

1  defendants Cry and Andreason denied another inmate grievance, and refused to process it as an

2  emergency appeal after he stopped receiving his blood pressure medication, a decision which was

3  apparently reversed by defendant Andreason's decision to process it as an emergency appeal.

4  Plaintiff also claims defendants Cry, Andreason, Donahue, and Grannis failed to properly

5  respond to his inmate grievances.  He further claims that defendant Khoury, Andreason, Bick,

6  Donahue, Anderson, Grannis, Surges, Cry, Sweigert, Perez, O'Ran, and Schwarz all failed to

7  properly act and respond to his inmate grievances regarding denial of medical care.  Following

8  his transfer, he alleges another inmate grievance, regarding pain medication, was systematically

9  denied by defendants Cox, Roche, James and Grannis.  Finally, he claims he filed another inmate

10 grievance regarding the lack of showers, medication and an unspecified injury, which was then

11 denied by defendants Kopec, Johnson, Perez, McDonald, and Grannis.

12          There is nothing in plaintiff's compliant to indicate any of the named individuals

13 had any personal connection with an alleged denial of a constitutional right.  Rather, all of

14 plaintiff's claims against these defendants stem solely from the denial of his inmate grievances,

15 which alone is insufficient to state a claim.

16          Defendants raise this issue in general, but because defendants Bick, Donahue,

17 Andreason and Khoury rely on a statue of limitations defense, which they withdrew in the reply

18 brief, they did not address the sufficiency of the claims against them relating to their role in the

19 inmate grievance process.  However, as this issue was raised in general and specifically as to

20 other defendants, and as such the claims do not stand alone, the undersigned finds it proper to

21 address all inmate grievances allegations against all of the defendants, regardless of whether the

22 claims were specifically addressed in the motion.  As prisoners have no stand alone due process

23 rights related to the administrative grievance process, all of these claims should be dismissed.

24 / / /

25 / / /

26 / / /

14

### G.     REGULATIONS/STATE LAW

Plaintiff claims defendants Schwartz and Khoury authored a memorandum setting a policy which violated Title 15.  He also claims that defendants Felker, McDonald, Johnson, Perez, Kopec, and Lamberton maintained a classification policy which violated administrative regulations.  Finally, he alleges defendant Lamberton transferred him to a different yard in violation of administrative regulations.

Defendants argue that these claims are barred by the Eleventh Amendment.  While this court may exercise supplemental jurisdiction over state law claims which relate to the federal law claims raised in a complaint, where no related federal law claims remain in a complaint, the court may decline to hear the state law claims.  See 28 U.S.C. § 1367.  Thus, regardless of whether the claims arising from alleged violations of state law and administrative regulations are barred by the Eleventh Amendment, these claims are not related to any of the remaining claims in this action, and the court should decline to exercise supplemental jurisdiction over such state claims.

### H.     SUPERVISOR LIABILITY

Supervisory personnel are generally not liable under § 1983 for the actions of their employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations.  See id.  The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution."  Iqbal, 129 S. Ct. at 1948.

Plaintiff claims that defendant Schwartz failed to take proper action, as warden, to correct the actions of her employees.  He also claims defendants Felker, McDonald, Tilton, Cox and Roche tacitly authorized indifference to his serious medical needs.  Next, he alleges defendants Schwarzenegger, Tilton, and Felker, as administrators, failed to create policies to properly house plaintiff and provide him proper medical care.  Similarly, he alleges defendants Schwarzenegger, Tilton, Felker and Schwartz failed to provide proper supervision over their subordinates.

As stated above, supervisors can only be held liable for their own actions, not those of their subordinates.  None of plaintiff's claims relate to any personal action of these supervisory defendants.  Rather, plaintiff's allegations relate to the supervisors' failure to correct another's behavior, tacit approval of others' actions, and unlawful policies and procedures.  These allegations are insufficient to state a claim for liability under § 1983.  The motion to dismiss these claims should be granted.

## I.      AMERICANS WITH DISABILITIES ACT

The Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., has been held to apply to state prisoners.  See Pennsylvania Dep't of Corr. v. Yeskey, 542 U.S. 206, 210 (1998).  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To state a claim under Title II of the ADA, the plaintiff must allege:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded

16

> from participation in or denied the benefits of the public entity's
> services, programs, or activities, or was otherwise discriminated
> against by the public entity; and (4) such exclusion, denial of
> benefits or discrimination was by reason of [his] disability.

McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004) (internal quotation marks omitted).  Thus, plaintiff must allege that he was denied access to some benefit, service, program or activity "by reason of his" disability or handicap.  See Lovell v. Chandler, 303 F.3d1039, 1052 (9th Cir. 2002).

Here, plaintiff alleges defendants Schwartz and Khoury authored some type of policy which violated the Americans with Disabilities Act, as well as administrative regulations. He fails to explain what this policy was, but states that his cane was confiscated by a non-defendant correctional officer based on this policy.  He also alleges defendants Gordon and Hill failed to properly house by not providing him a lower bunk to accommodate his mobility impairment.  He does not, however, allege that he was denied access to any benefit, service, program or activity, or that the denial to such was based on his disability.

Assuming for the moment that plaintiff qualifies as a individual with a disability, his allegations raise nothing more than inadequate accommodation of his medical needs.[3]  See Simmons v. Navajo County, 609 F3d 1011. 1022 (9th Cir. 2010).  He does not allege any type of actual discrimination due to his disability.  Rather, he alleges he was denied a lower bunk, and had his walking cane confiscated, both of which are alleged to have lacked a legitimate penological purpose.  However, lack of a legitimate penological purpose is not equivalent to discrimination based on a disability.  There is nothing in plaintiff's complaint which can be construed as an allegation that he was discriminated against due to his disability.  The motion to dismiss these claims should therefore be granted.

---

[3]     To the extent plaintiff may have been attempting to set forth an Eighth Amendment violation claim, such a claim necessarily fails.  As discussed above, a claim for violation of the Eighth Amendment requires deliberate indifference to a serious medical condition, which plaintiff fails to plead.

1    **J.    STATUTE OF LIMITATIONS**

2          For claims brought under 42 U.S.C. § 1983, the applicable statute of limitations is

3    California's statute of limitations for personal injury actions.  See Wallace v. Kato, 549 U.S. 384,

4    387-88 (2007); Wilson v. Garcia, 471 U.S. 261, 280 (1985); Karim-Panahi v. Los Angeles Police

5    Dep't, 839 F.2d 621, 627 (9th Cir. 1988).  State tolling statutes also apply to § 1983 actions.  See

6    Elliott v. City of Union City, 25 F.3d 800, 802 (citing Hardin v. Straub, 490 U.S. 536, 543-44

7    (1998)).

8          Before January 1, 2003, the statute of limitations for personal injury actions was

9    one year.  See Cal. Code Civ. Proc. § 340(3); see also Fink v. Shedler, 192 F.3d 911, 914 (9th

10   Cir. 1999) (citing Elliott, 25 F.3d at 802, and applying the one-year limitation period specified in

11   § 340(3)).  The personal injury statute of limitation was extended by passage of California Code

12   of Civil Procedure § 335.1 to two years, effective January 1, 2003.  See Canatella v. Van De

13   Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007) (citing Cal. Code Civ. Proc. § 335.1).  The extension

14   of this statute of limitations does not apply retroactively to claims which were already barred

15   under the one-year limitation period specified in § 340(3), plus any statutory tolling, as of the

16   effective date of January 1, 2003.  See Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004)

17   (citing Douglas Aircraft v. Cranston, 58 Cal.2d 462 (1962)).  However, the extended statute of

18   limitations period provided for in § 335.1 is applicable to claims which are not yet barred.  See

19   Lamke v. Sunstate Equip. Co., LLC, 387 F. Supp. 2d 1044, 1051-52 (N.D. Cal. 2004) (citing

20   Douglas, 58 Cal.2d at 465).

21         At the time Elliott was decided – 1994 – California Code of Civil Procedure §

22   352(a)(3) provided tolling of the statute of limitations when the plaintiff is "[i]mprisoned on a

23   criminal charge, or in execution under sentence of a criminal court for a term of less than for

24   ///

25   ///

26   ///

1   life."[4]  That tolling, however, only applies if the disability of incarceration existed at the time the

2   claim accrued.  See Elliott, 25 F.3d at 802 (citing Cal. Code Civ. Proc. § 357).  Pre-conviction

3   incarceration qualifies.  See id.  By the time Fink was decided – 1999 – the California tolling

4   provision for the disability of incarceration had been amended.  Specifically, California Code of

5   Civil Procedure § 352.1, which became effective January 1, 1995,  provides prisoners with only

6   two years of tolling.  See Fink, 192 F.3d at 914.  Prior to the effective date of § 352.1, prisoners

7   enjoyed tolling for the entire time of sentences less than life.  See id.  The Ninth Circuit in Fink

8   concluded that § 352.1 applies retroactively.  See id. at 915.  Thus, for § 1983 claims which

9   accrued before January 1, 1995, the running of the statute of limitations is tolled for two years, or

10  until January 1, 1997, whichever is later.  See Fink, 192 F.3d at 916.

11          Here, Defendants argue that plaintiff's claims relating to the denial of medication

12  from May 19, 2003, to May 23, 2003, are barred by the statute of limitations.[5]  Plaintiff filed this

13  action originally in the Northern District of California on May 29, 2007.  Thus, any damages

14  claims arising prior to May 29, 2003, are barred by the statute of limitations.  The undersigned

15  therefore agrees that the claims relating to the denial of medication in May 2003 are barred by the

16  statute of limitations.  However, as discussed above, these claims should be dismissed for failure

17  to state a claim, so any statute of limitation argument, especially since it does not encompass all

18  of plaintiff's claims, is unnecessary.

19  / / /

20  / / /

21  _____

22  [4]      "The California courts have read out of the statute the qualification that the period
    of incarceration must be 'for a term less than for life' in order for a prisoner to qualify for
23  tolling."  Jones v. Blanas, 393 F.3d 918, 928 n.5 (9th Cir. 2004) (citing Grasso v. McDonough
    Power Equipment, Inc., 70 Cal. Rptr. 458, 460-61 (Cal. Ct. App. 1968) (holding that a prisoner
24  serving a life sentence is entitled to the benefit of tolling)), Martinez v. Gomez, 137 Cal. 1124,
    1126 (9th Cir. 1998).  Thus, the length of the sentence is irrelevant.

25  [5]      Defendants withdrew their statute of limitations argument relating to the appeals
    process claims against defendants Bick, Donahue, Andreason, and Khoury, based on plaintiff's
26  clarifications.

**K.      RULE 18(a)**

As Defendants set forth, the Federal Rules of Civil Procedure allow a party to assert "as many claims as it has against an opposing party," but does not provide for unrelated claims against several different defendants to be raised on the same action.  Fed. R. Civ. Proc. 18(a).  "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Here, prior to the instant motion to dismiss, this was a potential issue.  However, as several of these claims should be dismissed, this will no longer be an issue.  This case should proceed as against defendants Cobb, Gordon and Hill only, and those claims are at least marginally related.  Even if not, proceeding on two claims against three defendants will not render this an unmanageable case.  Plaintiff should not be required to separate these remaining claims into two separate cases.  The request to dismiss any unrelated claims should be denied.

However, to the extent any of plaintiff's claims discussed above are curable by amendment, no leave to amend should be granted.  Leave to amend should generally be granted "[u]nless it is absolutely clear that no amendment can cure the defects."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam).  However, doing so would raise the issue of the complaint violating Rule 18.  Therefore, the motion to dismiss should be granted with no leave to amend.  However, the dismissal of the claims subject to amendment should be without prejudice to plaintiff's ability to file a new action to cure the defects identified and properly state a claim.[6]

### III.  CONCLUSION

Based on the foregoing, the undersigned recommends that defendants' motion to dismiss be granted in part and denied in part, as follows:

---

[6]      The court offers no opinion on the viability of these claims or plaintiff's ability to cure the defects thereto.

1.      Plaintiff's Eighth Amendment claims for denial of medical needs against defendants Warwick, Weaver, Anderson, Andreason, Cry, Khoury, Bick, Donahue, Kearney, Cox, Roche, and James be dismissed without prejudice;

2.      Plaintiff's Eighth Amendment conditions of confinement claims related to clothing and showers be dismissed without prejudice;

3.      Plaintiff's Eighth Amendment claims for verbal threats against defendants Cobb, Aronsen, Lamberton, and Miller be dismissed without prejudice;

4.      Plaintiff's claims of retaliation against defendants Miller, Aronsen, Cobb, Khoury, Moreno, Prebula, Donahue, and Geoffrey be dismissed without prejudice;

5.      Plaintiff's claims for conspiracy against defendants Miller, Khoury, Prebula, Moreno, Donahue, and Geoffrey be dismissed without prejudice;

6.      Plaintiff's claims relating to the administrative grievance process against defendants Cry, Donahue, Bick, Andreason, Khoury, Grannis, Khoury, Anderson, Surges, Sweigert, Perez, O'Ran, Schwarz, Cox, Roche, James, Kopec, Johnson, Perez, and McDonald be dismissed with prejudice;

7.      Plaintiff's state law claims against defendants Schwartz, Khoury, Felker, McDonald, Johnson, Perez, Kopec, and Lamberton be dismissed without prejudice;

8.      Plaintiff's claims against defendants Schwartz, Felker, McDonald, Tilton, Cox, Roche, and Schwarzenegger, based solely on their supervisory positions, be dismissed with prejudice;

9.      Plaintiff's claims for violation of the American's with Disabilities Act against defendants Schwartz, Khoury, Gordon and Hill be dismissed without prejudice;

10.     The motion to dismiss Plaintiff's Eighth Amendment conditions of confinement against defendant Cobb be denied;

11.     Defendants Anderson, Andreason, Aronsen, Bick, Cox, Cry, Donahue, Felker, Geoffrey, Grannis, James, Johnson, Khoury, Warwick, Lamberton, McDonald, Miller,

1   Moreno, O'Ran, R. Perez, T. Perez, Prebula, Roche, Schwartz, Schwarzenegger, Surges,

2   Sweigert, Tilton, and Weaver be dismissed from this action; and

3         12.    This case should proceed against defendants Cobb, Gordon, and Hill only,

4   on Plaintiff's claims for violation of his Eighth Amendment rights against defendant Cobb

5   relating to access to bathroom facilities, and his failure to protect claims against defendants

6   Gordon and Hill which were not challenged in the motion.

7         These findings and recommendations are submitted to the United States District

8   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

9   after being served with these findings and recommendations, any party may file written

10  objections with the court.  Responses to objections shall be filed within 14 days after service of

11  objections.  Failure to file objections within the specified time may waive the right to appeal.

12  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13

14   DATED:   December 22, 2010

15

16                              CRAIG M. KELLISON
                                UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26